HEATHER KRAEMER,

    Plaintiff,

              Case No. 24-cv-1332-bhl

  v.

FRANK BISIGNANO, [1]

    Defendant.

## DECISION AND ORDER

    Plaintiff Heather Kraemer seeks review of the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act, 42 U.S.C. §405(g). She argues the administrative law judge failed to address relevant medical evidence concerning Kraemer's mental status in concluding she was not disabled. For the reasons set forth below, the Commissioner's decision will be affirmed.

## PROCEDURAL BACKGROUND

    Kraemer applied for DIB and SSI on December 30, 2020, alleging a disability onset date of July 1, 2016. (ECF No. 10-1 at 21.) After her claims were denied initially and on reconsideration, she requested a hearing before an administrative law judge (ALJ). (*Id.* at 141, 145.) The ALJ held a hearing on October 30, 2023 and denied Kraemer's disability claims, concluding that she was not disabled. (*Id.* at 23–24.) The ALJ explained that Kraemer retained the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to certain limitations. (*Id.* at 27–37.) On August 19, 2024, the Appeals Council denied Kraemer's request for review of that decision. (*Id.* at 7–9.) Kraemer now seeks judicial review pursuant to 42 U.S.C. §405(g).

---

[1] On May 7, 2025, while this matter was pending, Frank Bisignano was sworn in as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Bisignano is automatically substituted as the defendant in this case. *See* 42 U.S.C. §405(g).

## FACTUAL BACKGROUND

Kraemer was born on March 18, 1985. (*Id.* at 219.) She has only worked part time since 2016 and stopped working altogether in 2020. (*Id.* at 230.) Kraemer claims she is disabled based on the following conditions: attention deficit hyperactive disorder (ADHD), bipolar disorder, social anxiety, osteoarthritis of spine with radiculopathy, left hip pain, and post-traumatic stress disorder (PTSD). (*Id.* at 250.)

In assessing Kramer's claims, the ALJ followed the five-step sequential evaluation of disability set out in 20 C.F.R. §416.920(a). (*Id.* at 22–23.) The ALJ found Kraemer's osteoarthritis of the lumbar spine, sacroiliitis, hip degenerative joint disease, degenerative joint disease of the knees, restless leg syndrome, obesity, bipolar disorder, generalized anxiety disorder, social anxiety disorder, ADHD, and PTSD were severe impairments. (*Id.* at 24–25.) The ALJ also concluded that Kraemer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 25–27.)

The ALJ then determined that Kraemer had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except: she is unable to climb ropes, ladders and scaffolds, but can occasionally climb ramps or stairs; she can occasionally stoop, crouch, crawl, kneel, and balance; she is unable to work at unprotected heights and with hazards and dangerous machinery; she can understand, remember, and carry out simple instructions; she can concentrate and maintain pace for two-hour periods; she requires regular work duties and expectations with occasional changes; she can occasionally interact with co-workers and supervisors but not have public interaction. (*Id.* at 27–35.) The ALJ found that Kraemer was capable of performing jobs that exist in significant numbers in the national economy, including routing clerk, marker, and collator operator. (*Id.* at 36–37.) The ALJ therefore determined that Kraemer was not disabled.

## LEGAL STANDARD

The Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "[T]he threshold for such evidentiary

sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053–54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). In reviewing the record, the Court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is deferential and is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## ANALYSIS

Kraemer argues that the ALJ "failed to address relevant medical evidence, collapsing the logical bridge to the ALJ's conclusions." (ECF No. 13 at 7.) She makes two primary (and perhaps interrelated) arguments: (1) the ALJ miscited evidence; and (2) the ALJ failed to account for an incident where Kraemer suffered from psychotic symptoms, including delusions and paranoia. (*Id.* at 16–17.) She maintains that these errors caused the ALJ to hold Kraemer's past work against her and reject greater limitations proposed by state agency psychologists.[2] (*Id.* at 17.) She insists that, because of these issues, the ALJ's assigned RFC failed to include more limitations, which in turn caused the Vocational Expert to provide occupations beyond Kraemer's capabilities. (*Id.* at 31.) The Commissioner argues that Kraemer's challenges amount to impermissibly nitpicking of the ALJ's decision. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010) (explaining that the

---

[2] Kraemer does not challenge the ALJ's evaluation of her physical impairments. As such, any subsequent challenge is waived. *United States v. Bard*, 73 F.4th 464, 473 (7th Cir. 2023) ("[A]rguments not raised in a party's opening brief are waived . . . . [W]e do not consider it further.").

Court will not "nitpick the ALJ's opinion for inconsistencies or contradictions"). Because the ALJ's decision is adequately supported by the record, it will be affirmed.

## I.     The ALJ Did Not Miscite Evidence When She Rejected Kramer's claims.

Kraemer maintains that the evidence cited by the ALJ does not support her reasoning. (ECF No. 13 at 18–20.)  Kraemer begins with a block quote from the ALJ's decision:

> Mental status examination findings over the course of the period at issue overall reflect reasonably good mental functioning that supports the assessed residual functional capacity.  The findings do reflect at times anxious and/or depressed moods, but apart from that, were generally unremarkable even during times of symptom exacerbation.  The claimant was regularly described as calm, pleasant, interactive, and cooperative, with good eye contact and clear, articulate speech; her affect was typically stable and of normal range.  The claimant exhibited logical, goal-directed thought processes, good recent/remote memory, good attention and concentration with the ability to follow the conversation, and good insight and judgment.  Her dress, hygiene, and grooming were maintained.

(*Id.* at 18; ECF No. 10-1 at 32 (internal citations omitted) (citing ECF No. 10-1 at 397, 1311, 1316, 1321, 1570, 1591, 1649, 1664, 1686, 1696, 1712, 1733, 1754, 1764, 1783, 1919, 2003, 2057, 1961–1969).)  Kraemer argues that the ALJ's citations for this passage do not support her reasoning because the pages cited do not relate to mental status examination findings.  She complains that the cited pages instead refer to telephone encounters for a refill of medication; a presentation that Kraemer complained of "a lot of things," that she is "up and down," and that her PTSD and anxiety increased; a higher score on her patient health questionnaire; and measurements from a physical body exam.  (*Id.* at 18–20.)

Kraemer's criticism is superficial.  The ALJ's citations align with follow-up notes from Kraemer's various medical appointments over the past several years.  (ECF No. 10-1 at 32 (citing ECF No. 10-1 at 397, 1311, 1316, 1321, 1570, 1591, 1649, 1664, 1686, 1696, 1712, 1733, 1754, 1764, 1783, 1919, 2003, 2057, 1961–1969).)  The ALJ did not cite specific pages within these documents; instead, the ALJ cited the documents as a whole, generally to the first page of a follow-up note.[3]  Within the cited follow-up notes, the record contains relevant discussions of mental status examinations that describe Kraemer exactly as the ALJ did.  In other words, the record supports the ALJ's description of Kraemer's mental conditions, including times of anxious and depressed mood and symptom exacerbation, but generally unremarkable.  (*Id.* at 399–400, 1312–

---

[3] The exception is the ALJ's citation to the last page of a treatment note from April 15, 2019.  (*See* ECF No. 10-1 at 32 (citing ECF No. 10-1 at 1686).)

33, 1318, 1323–24, 1581, 1594, 1653–64, 1669–70, 1693, 1715, 1736, 1757, 1767, 1788, 1922–23, 1962, 2007–08, 2060–62.)  While the ALJ could have included more precise "pinpoint" cites, the documents themselves confirm that the ALJ's decision was supported by substantial evidence. Accordingly, when the documents are read as a whole, the Court can follow the ALJ's logical bridge from the facts of the case to the resulting decision.  *See Warnell*, 97 F.4th at 1053–54.  The law does not require the Court to remand a case for an ALJ to pinpoint her citations to specific pages in documents already cited.

## II.     The ALJ Supported Her Decision With Substantial Evidence.

The ALJ found that Kraemer's mental health was not as severe as Kraemer alleged, because Kraemer's symptoms were controlled with medication and Kraemer "demonstrated good mental functioning during exams."  (ECF No. 10-1 at 31.)  Kraemer's light work mental health RFC was therefore limited in that:  she can understand, remember, and carry out simple instructions; she can concentrate and maintain pace for two-hour periods; she requires regular work duties and expectations with occasional changes; she can occasionally interact with co-workers and supervisors but not have public interaction.  (*Id.* at 27.)

The ALJ supported this determination by acknowledging that while Kraemer experienced fluctuating mood and anxiety, the evidence also showed that medication has generally helped her focus/concentration, mood regulation, and anxiety.  (*Id.* at 32, 1776, 1783–84, 1755, 1724, 1734, 1665.)  The ALJ pointed out that Kraemer's symptoms of anxiety and low mood increased in April 2019, at a time when Kraemer was off her medication after failing to comply with drug screening and appointments.  (*Id.* at 32, 1334–35.)  By early 2020, Kraemer was back on her medication, and her mood became relatively stable (although this did sometimes fluctuate) and she then had increased energy over the next two years.  (*Id.* at 32, 1322, 1326, 1906, 397.)  The ALJ also acknowledged an anxiety flare up in March 2023 that led to a visit to the emergency department but weighed this against a screening showing mild symptoms for the prior six months and Kraemer's concern that her provider refused to disable her for her mental health complaints.  (*Id.* at 32 (citing ECF No. 10-1 at 1970–75, 2058).)  And, as outlined in the prior section, the ALJ found it significant that Kraemer was regularly described as calm, pleasant, interactive, cooperative, with good eye contact and clear, articulate speech; her affect was typically stable and of normal range; she exhibited logical, goal-directed thought processes, good recent/remote memory, good attention and concentration with the ability to follow the conversation, and good

insight and judgment; her dress, hygiene, and grooming were consistently maintained. (*Id.* at 32, 399–400, 1312–13, 1318, 1323–24, 1581, 1594, 1653–64, 1669–70, 1693, 1715, 1736, 1757, 1767, 1788, 1922–23, 1962, 2007–08, 2061.)

Kraemer argues that remand is required because the ALJ failed to address relevant medical evidence of delusions, destroying the logical bridge built to her conclusions. She first points to a June 27, 2017 treatment date, cited by the ALJ, that indicated Kraemer was having delusions and was poorly groomed. (ECF No. 13 at 20–22; ECF No. 10-1 at 32 (citing ECF No. 10-1 at 1783).) Kraemer insists that delusions and poor grooming are inconstant with the ALJ's conclusion that her mental health was "generally unremarkable." (ECF No. 13 at 21 (citing ECF No. 10-1 at 32).) In a similar vein, Kraemer faults the ALJ for not explaining a May 9, 2017 note that also indicated delusions. (*Id.* at 22 (citing ECF No. 10-1 at 1815).) She insists that the delusions from that treatment date could change the RFC assigned by the ALJ. (*Id.* at 21–22.) These arguments do not withstand scrutiny.

The law is clear that an ALJ's decision should be affirmed when the ALJ minimally articulates the basis for her conclusions. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (citing *Warnell*, 97 F.4th at 1053) (the minimal articulation requirement is "an obligation that extends no further than grounding a decision in substantial evidence."). The ALJ's analysis satisfies this requirement. The June 27, 2017 treatment note, which Kraemer cites for its discussion of delusions and poor grooming, also describes Kraemer as calm and pleasant with a stable affect and good memory. (ECF No. 10-1 at 1788.) This is consistent with and supports the ALJ's finding that while Kramer experienced times of "symptom of exacerbation," at other times, she had "reasonably good mental functioning." (*Id.* at 32, 1788.) While the ALJ did not expressly mention Kraemer's delusions, the ALJ acknowledged symptom exacerbation and couched "unremarkable" with the word "generally." In addition, other cited evidence indicates that Kraemer did not have delusions post-June 2017 and was consistently well groomed. (*Id.* at 32, 1767, 1755, 1736, 1715, 1669, 1654, 1323, 1318, 1312, 1594, 1581, 1923, 400, 1962, 2007.) Nor did Kramer mention in her application or in the hearing that delusions were an ongoing symptom of her mental health issues—further indicating that she does not continue to suffer from them. (*See* ECF No. 10-1 at 48, 62–65, 250.) As for the May 9, 2017 treatment note, the law does not require the ALJ to "address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053–54

(citations omitted).  To the extent that Kraemer believes her delusions should have been weighed more heavily, the Court does not reconsider facts or reweigh evidence when reviewing an ALJ's decision.  *See Estok*, 152 F.3d at 638.

Kraemer also insists that the ALJ "overlooked evidence relevant to identifying the severity of Kraemer's condition" and impermissibly minimized her flare up in March 2023.  (ECF No. 13 at 22–23, 27–28.)  But the ALJ specifically recognized that Kraemer's mood and anxiety have fluctuated over time, including that she had an anxiety flare up in March 2023 and that she experienced times of exacerbated symptoms.  (ECF No. 10-1 at 32.)  The ALJ also relied on Kraemer's medication usage and mental health records that described Kraemer as calm, pleasant, interactive, cooperative; maintaining good eye contact and clear, articulate speech; stable, normal affect; logical and goal-directed; having good recent/remote memory, good attention and concentration with the ability to follow the conversation, and good insight and judgment; hygienic and well groomed.  (*Id.*)  It is not for this Court to second-guess the ALJ or re-weigh the evidence. As for Kraemer's March 2023 flare up, the ALJ found relevant that the prior six months Kraemer exhibited only mild symptoms and that one of her primary concerns at the time of the flare up was her provider's refusal to disable her for her mental health complaints.  (*Id.* at 32, 1974, 2058.) Substantial evidence supports the ALJ's analysis of Kraemer's mental health.  *See Biestek*, 587 U.S. at 103.  The ALJ might not have fully summarized the record, but she was not required to. *See Warnell*, 97 F.4th at 1053–54.

Kraemer also maintains that "the ALJ held it against Kraemer that she had past work at the substantial gainful activity level" and that the ALJ "should have acknowledged [her] efforts to continue work while experiencing significant mental symptoms and undergoing numerous treatments to relieve them."  (ECF No. 13 at 23–25.)  It appears that Kraemer is criticizing the ALJ for finding her uncredible after explaining that Kraemer is the primary caregiver for her children, has homeschooled her children since 2020, can attend to her personal and medical cares, take her medications without reminders, cook, clean and shop, leave her home independently, and engage in activities she likes to do.  (*See* ECF No. 10-1 at 32.)  The ALJ then stated that "[t]aken in isolation, these activities may not equate to the ability to sustain full-time work; however, when considered with the overall record, they suggest that the claimant retains greater mental capacities than alleged."  (*Id.*)

An ALJ must consider a claimant's subjective statements about symptoms and limitations, *see* 20 C.F.R. §404.1529, however, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability[,]" 42 U.S.C. §423(d)(5)(A). The regulations provide a number of factors for assessing a claimant's statements about the intensity and persistence of his symptoms and how they limit her capacity for work. *See* 20 C.F.R. §404.1529(c). These factors include objective medical evidence, information from a claimant's medical sources about her symptoms, a claimant's daily activities, a claimant's course of treatment, inconsistencies between a claimant's statements, and other evidence. 20 C.F.R. §404.1529(c)(2)–(4). An ALJ is only required to give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony. *See* SSR 16-3p, 81 Fed. Reg. 14166, 14171 (Mar. 16, 2016). ALJs must consider a claimant's "own description or statement of . . . [her] physical . . . impairment(s)." SSR 16-3p, 82 Fed. Reg. 49462, 49463 (Oct. 25, 2017). This is a two-step process. First, the ALJ looks to "whether there is an underlying medically determinable . . . mental . . . impairment[] that could reasonably be expected to produce an individual's symptoms[.]" *Id.* Second, if there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.* Because an ALJ "is in the best position" to make this credibility determination, reviewing courts will reverse it only if the determination is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citations omitted); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023). The ALJ followed these principles. As previously noted, the ALJ pointed to multiple medical records indicating that Kraemer had reasonably good mental functioning and considered Kraemer's daily activities in connection with the medical record. Because the ALJ provided at least one reason to support her credibility determination, the Court cannot reverse it. *See Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) (citing *McKinzey v. Astrue*, 641 F.3d 884, 890–91 (7th Cir. 2011)).

## III. The ALJ Appropriately Weighed the State Agency Psychological Consultant's Opinion.

Kraemer also criticizes the ALJ's finding that Kraemer has the capacity for occasional interaction with supervisors and co-workers and the ALJ's rejection of further limitations based on Kraemer's ability to leave her home independently and attend appointments unaccompanied. (ECF No. 10-1 at 34–35, 261, 279, 288.) In determining Kraemer's limitations for social

interaction, the ALJ considered a state agency psychological consultant's opinion, who provided that Kraemer had moderately-rated limitations and could engage in "superficial work task interpersonal interactions." (ECF No. 10-1 at 34.) The ALJ found the psychological consultant's opinion to be largely persuasive and supported by the record. (*Id.*) But the ALJ also considered evidence showing that, whether seen by familiar or unknown providers, Kraemer was generally found to be calm and cooperative, with good eye contact, stable affect, normal speech in terms of rate, volume, and tone, and no psychomotor abnormalities. (*Id.* at 34, 399–400, 1312, 1318, 1581, 1653–54, 1669–70, 1692–93, 1705, 1715, 1736, 1757, 1788, 1922–23, 1962, 2007, 2060–61.)

Kraemer argues that the ALJ improperly rejected the state agency's limitations on the quality of Kraemer's social interactions (superficial interactions only). (ECF No. 13 at 26–30.) The regulations provide that when evaluating and articulating the persuasiveness of a medical opinion, ALJs should consider supportability, consistency, the medical provider's relationship with the claimant, any specializations, and any other factors that tend to support or contradict the opinion. 20 C.F.R. §416.920c(c)(1)–(5). Of these, supportability and consistency are the most important. *Id.* §416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . ."); *see also* 20 C.F.R. §404.1520c(b)(2). An ALJ's failure to properly consider and explain application of these factors to medical opinions in the record is reversible error. *See e.g.*, *Maynard v. Saul*, No. 20-cv-677-wmc, 2021 WL 3362554, at *3–4 (W.D. Wis. Aug. 3, 2021); *Lenz v. Kijakazi*, No. 20-cv-1810-SCD, 2022 WL 154548, at *5–8 (E.D. Wis. Jan. 18, 2022).

The ALJ complied with the regulations. She determined that a limitation of "superficial interactions" was not supported or consistent with the evidence that, regardless of the provider, Kraemer was generally found to be calm and cooperative; to have good eye contact, stable affect, normal speech in terms of rate, volume, tone, and no psychomotor abnormalities; and to be able to leave her home independently. In sum, the ALJ properly confronted the medical evidence and adequately addressed the factors of supportability and consistency in evaluating the psychological consultant's opinion.

**CONCLUSION**

Because none of Kraemer's asserted grounds provides a basis for remand, and the ALJ's decision is supported by substantial evidence, the decision is affirmed, and the case is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that, pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and this case **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 1, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge